**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frank BANCALARI, Defendant–
Appellant.**

No. 95–50369.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1996.

Decided April 8, 1997.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, California, for the appellant.

Warrington S. Parker III and Benjamin Jones, Jr., Assistant United States Attorneys, Los Angeles, California, for the appellee.

Before: HUG, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.

HUG, Chief Judge:

Frank Bancalari was convicted by a jury of kidnapping and transporting a person across a foreign border in violation of 18 U.S.C. § 1201(a)(1), and for aiding and abetting the use of a firearm in the commission of the kidnapping in violation of 18 U.S.C. § 924(c). The essential issue in the kidnapping conviction is whether the kidnapping was still in progress when the border was crossed. The essential issue in the firearms conviction is whether the jury instruction was erroneous, and if so, whether it was harmless. We have jurisdiction under 28 U.S.C. § 1291. We affirm the kidnapping conviction, but reverse the firearms conviction.

## BACKGROUND

Bancalari was convicted for the October 6, 1994 kidnapping of Maria Elena Muniz, the mother of his daughter. The prosecution produced the following evidence at trial. Prior to the kidnapping, Bancalari and Muniz had had a six year relationship that ended sometime in 1993. After their relationship ended, the two still saw each other occasionally and Bancalari was allowed to see their daughter. A week prior to the kidnapping, several events occurred that demonstrated the volatile nature of their relationship.

In the morning of September 29, 1994, Bancalari went to Muniz's Torrance, California, apartment and ordered her to get into his truck. When she refused, he punched her in the face—giving her a black eye—and forced her into the vehicle. Bancalari did not allow Muniz to go to work, and instead, forced her to go with him to his place of work. When she tried to flee, he began to hit her again. He eventually allowed her to return home later that afternoon. That evening, Bancalari made a telephone call to Muniz in which he threatened to kill her.

On October 4, 1994, Muniz obtained a temporary restraining order against Bancalari. When Muniz and her boyfriend, Christopher Pittman, attempted to serve the restraining order on Bancalari, Bancalari hit Pittman in the face, screamed at Muniz and again threatened to kill her.

On the morning of October 6, 1994, Pittman was driving Muniz to work when Bancalari and an unidentified passenger began following them in Bancalari's truck. Bancalari then veered in front of Pittman's car, forcing Pittman to stop in the middle of the street. Bancalari's passenger jumped out of the truck, pulled out a gun and pointed it at Pittman, causing Pittman to flee. At that point, Bancalari exited his truck, dragged Muniz from Pittman's car and forced her into his truck. Bancalari's passenger took Bancalari's daughter from the car and placed her in the truck before leaving the scene. Once in the truck, Bancalari took Muniz's permanent resident card and social security card away from her, then drove directly to Mexico, reaching the border three hours later. When the truck was stopped at the border inspection station, Muniz did not say anything or make an attempt to escape.

After crossing the Mexican border, Bancalari pulled out a gun—a different gun than the one used by Bancalari's accomplice—pointed it at the back of Muniz's head, and squeezed the trigger. The gun was not loaded, but Bancalari showed Muniz that he had bullets for it, and threatened to use the bullets on her if she did not keep quiet.

Bancalari and Muniz were in Mexico for the next five days, staying with Bancalari's brother and friends. Muniz did not make any attempt to escape during that time. Bancalari eventually allowed Muniz to return to the United States, but only after she promised to dismiss any charges against him, quit her job, and stop dating Pittman.

Bancalari was convicted of kidnapping Muniz, in violation of 18 U.S.C. § 1201(a)(1), and of aiding and abetting the use of the firearm in the kidnapping, in violation of 18 U.S.C. § 924(c). Bancalari appeals both convictions.

## DISCUSSION

### I. Sufficiency of Evidence Underlying the Kidnapping Conviction

▇ Bancalari was convicted of kidnapping in violation of 18 U.S.C. § 1201(a)(1). This provision reads:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when:
>
> > (1) the person is wilfully transported in interstate or foreign commerce;
>
> . . .
>
> shall be punished by imprisonment for any term of years or for life.

18 U.S.C. § 1201(a)(1). In convicting Bancalari, the Government was required to prove: (1) that Bancalari unlawfully restrained Muniz by kidnapping, seizing, or carrying her away; in order to obtain some ransom, reward, or other benefit; and (2) that Bancalari wilfully transported Muniz across a border in interstate or foreign commerce while so kidnapped. *See id; United States v. Toledo,* 985 F.2d 1462, 1467 (10th Cir.), *cert. denied,* 510 U.S. 878, 114 S.Ct. 218, 126 L.Ed.2d 174 (1993).

▇ Bancalari argues that there was insufficient evidence for a rational jury to find that his kidnapping of Muniz was still in progress at the time that she and Bancalari crossed the border into Mexico. Because Bancalari moved under Fed.R.Crim.P. 29 for a judgment of acquittal at the close of evidence, he has preserved his right to test the sufficiency of the evidence against him here on appeal. *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir.1994). Our review of his claim, however, is "highly deferential" to the jury's findings. *United States v. Rubio–Villareal,* 967 F.2d 294, 296 (9th Cir.1992) (en banc). There is sufficient evidence to support his conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Jones,* 84 F.3d 1206, 1210 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996).

▇ In viewing the evidence in the light most favorable to the prosecution, we presume that all issues of witness credibility were resolved below in favor of the Government, and as such, are generally immune from appellate review. *United States v. Garza,* 980 F.2d 546, 552 (9th Cir.1992); *United States v. Gordon,* 844 F.2d 1397, 1405 (9th Cir.1988). Similarly, when we are "faced with a record of historical facts that supports conflicting inferences [we] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution." *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793.

▇ The record manifests ample evidence upon which a rational jury could have found that Bancalari's unlawful kidnapping of Muniz continued at the time that Bancalari and Muniz had crossed the border into Mexico. The record shows that Bancalari dragged Muniz from Pittman's car, pushed her into his truck, and drove her past the Mexican border. Just after crossing into Mexico, Bancalari took out a gun, pointed it at Muniz's head, dry fired it, and showed Muniz the bullets with which he could in truth discharge his weapon. Testimony shows that he also threatened to have two men rape her, held her in Mexico without her consent, and failed to release her until she made a number of concessions.

The defense theory was that, although Muniz was apprehended against her will, she crossed over into Mexico not because she was being kidnapped, but because she did not want to be separated from her child. The defense's argument in this regard is based on a prior inconsistent statement that Muniz provided an investigator regarding her daughter while she was not under oath. She told Bancalari's investigator that she "never thought that [Bancalari] had intentions of physically harming me, but I would never leave without my daughter."

The essential issue is whether the kidnapping had terminated by the time they crossed the border. *United States v. Toledo,* 985 at 1467. The district court correctly instructed that

> If Maria Elena Muniz was initially seized, kidnapped or carried away at some place in the United States but then voluntarily consented to accompany the defendant by the time they reached a foreign border, the defendant cannot be found guilty.

There was considerable evidence from which the jury could have found that the kidnapping continued at the time the Mexican border was crossed. There is no evidence that Muniz consented to being transported across the border, and strong evidence the involuntary kidnapping continued for some time after they crossed the border.

### II. Aiding and Abetting the Section 924(c) Violation

#### A. Jury Instructions

■ Bancalari next challenges the jury instructions on the ground that they did not properly set forth the requisite *mens rea* for aiding and abetting the § 924(c) violation. Whether the jury instructions correctly sets forth the elements of a crime is reviewed de novo. *United States v. Matta–Ballesteros,* 71 F.3d 754, 771 (9th Cir.1995).

■ Section 924(c) provides in part "[w]hoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years." 18 U.S.C. § 924(c). Bancalari was convicted as an aider and abettor of his *accomplice's* use of the firearm in the initial abduction of Muniz; he was not charged with a § 924(c)

violation for his own use of the firearm against Muniz once the Mexican border had been crossed.

■ Any person who "aids, abets, counsels, commands, induces or procures" the commission of a crime is punishable as a principal. 18 U.S.C. § 2(a). To be convicted of aiding and abetting, the jury must find beyond a reasonable doubt that the defendant "knowingly and intentionally aided and abetted the principals in each essential element of the crime." *United States v. Dinkane,* 17 F.3d 1192, 1196 (9th Cir.1994). Thus, in order to be convicted of aiding and abetting his accomplice's § 924(c) violation, Bancalari must have knowingly and intentionally aided and abetted the use or carrying of the firearm during and in relation to the crime of kidnapping. The instructions given by the trial court would have permitted the jury to convict Bancalari simply if they found that he *knew* that a firearm was being used or carried during and in relation to the kidnapping; the jury was not required to find that Bancalari intentionally aided and abetted the use or carrying of the firearm.[1]

Bancalari argues that this was error. He argues that simply "knowing" that a firearm was being used in the underlying offense is insufficient to be convicted for aiding and abetting the use of the firearm because § 924(c) requires proof that he "directly facilitated or encouraged the use or carrying of a firearm." *United States v. Medina,* 32 F.3d 40, 45 (2nd Cir.1994) (mere knowledge that a firearm is to be used in a robbery is insufficient to create aiding and abetting liability under § 924(c), even where the defendant performs some further act to facilitate or encourage the robbery).

■ We agree with the Second Circuit's formulation in *Medina* that to be guilty

---

1. The district court instructed the jury that to find Bancalari guilty of aiding and abetting the § 924(c) violation, the government was required to prove the following beyond a reasonable doubt:

First. That the kidnapping alleged in count one was committed. Second. That the defendant was a willful participant in the kidnapping alleged in count one. And third, that the defendant *knew* that the firearm was being carried and used during and in relation to the kidnapping alleged in count one.

> It is not enough that the defendant merely was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping another commit the [kidnapping] *knowing* that a firearm was being carried or used in relation to the commission of that offense.
>
> The phrase "used or carried a firearm" means having a firearm used to assist or aid in the commission of the [kidnapping].
>
> (emphasis added).

of aiding and abetting under § 924(c), the defendant must have "directly facilitated or encouraged the use" of the firearm and not simply be aware of its use. *Id.* Aiding and abetting is a specific intent crime. *United States v. Andrews,* 75 F.3d 552, 555 (9th Cir.1996). To sustain a conviction for aiding and abetting, the evidence must show that the defendant "specifically intended to facilitate the commission of [the principal's] crimes"; mere presence at the scene of the crime and knowledge that the crime is being committed is not enough. *Id.* The evidence must also show that the defendant aided and abetted "in each essential element" of the crime. *Dinkane,* 17 F.3d at 1196. It is the firearm crime that Bancalari is charged with aiding and abetting, not the kidnapping crime. In the instant case, the jury was not required to find an essential element of the crime—that Bancalari knowingly and intentionally aided and abetted the principal's use of the firearm. Because the jury was not so instructed, we hold that the instructions were erroneous.

### B. Harmless Error Analysis

 In a direct appeal of a conviction for a federal crime, a jury instruction that eliminates or misstates an element of the crime can be harmless only if it can be shown that the jury *necessarily* made the omitted finding. *United States v. Lopez,* 100 F.3d 98, 103 (9th Cir.1996).[2] The Government contends that the jury instructions, taken as a whole, necessarily required the jury to find that Bancalari intentionally facilitated or encouraged the use of the firearm, thus the error was harmless. The Government argues that because the jury was required to find both that Bancalari acted willingly in the act of kidnapping and that he was acting in concert with his accomplice, the jury necessarily must have found that Bancalari knew about the firearm and thus facilitated the use of firearm by driving his accomplice to the site of the abduction. We do not agree.

The Second Circuit in *Medina* stated

Contrary to the government's contention, Medina cannot be convicted as an aider and abettor under § 924(c) merely because he knew that a firearm would be used or carried and, with that knowledge, performed an act to facilitate or encourage the robbery itself. Rather, the language of the statute requires proof that he performed some act that directly facilitated or encouraged the use or carrying of a firearm.

*Medina,* 32 F.3d at 45. The opinion noted that "it is this specific [firearm] crime that [the defendant] must have consciously and affirmatively assisted if his conviction on that charge is to be upheld." *Id.*

This highlights the finding that the jury is required to have made. Under the instructions that were given there is no way we can say that Bancalari consciously and intentionally assisted his accomplice in using or carrying a firearm during and in relation to the kidnapping, even though he knew at some point that his accomplice did use the firearm during the actual kidnapping. There was ample evidence that the accomplice's chasing Pittman off with a gun was part of the kidnapping crime and that the accomplice violated § 924(c), however there is no finding that Bancalari intentionally assisted or facilitated the accomplice's use or carrying of the gun in doing so. The error is not harmless because we cannot determine that the jury necessarily found this element of the crime. We therefore reverse the firearm conviction.

### CONCLUSION

Because there was sufficient evidence to support a finding that the kidnapping was in effect at the time the Mexican border was crossed, we affirm the kidnapping conviction. However, because the jury was improperly instructed as to the aiding and abetting charge in connection with the firearm charge, and because the instructional error was not harmless, we reverse the § 924(c) conviction.

AFFIRMED in part, REVERSED in part.

---

**2.** The Supreme Court recently held that a different harmless error analysis is required when reviewing a state court conviction on a petition

for a writ of habeas corpus. *California v. Roy,* —— U.S. ——, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996).