# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4399

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Joseph D. Comstock, | * | |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted: May 12, 1998
Filed: September 3, 1998

_____

Before BOWMAN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Joseph D. Comstock appeals his sentence following his guilty pleas to one count of bank fraud and one count of credit card fraud. Comstock argues that the district court erred in sentencing him to a 30-month term of imprisonment to run consecutively with his two concurrent, undischarged terms of imprisonment for state law convictions. We vacate his sentence and remand for resentencing consistent with this opinion.

I.

On March 4, 1996, a grand jury returned an indictment against Comstock, alleging four counts of bank fraud in violation of 18 U.S.C. § 1344 (1994), and one count of credit card fraud, in violation of 18 U.S.C. § 1029(a)(2). The indictment alleged that Comstock committed the criminal acts between November 1992 and January 1994.

Subsequent to the return of this indictment, Comstock was sentenced to two terms of imprisonment for state law convictions. On December 5, 1996, a California state court sentenced Comstock to two years in custody on his convictions for two counts of fraudulently passing nonsufficient funds checks. On December 6, 1996, the same court sentenced Comstock to two years in custody on his convictions for two counts of fraudulently passing nonsufficient funds checks and one count of felony burglary. The court ordered this sentence to run concurrently with Comstock's December 5 state court sentence.

Comstock made his initial appearance on the federal indictment on April 17, 1997. On May 14, 1997, Comstock pleaded guilty to one count of bank fraud and one count of credit card fraud. The court then ordered the preparation of a presentence investigation report (PSIR).

The district court held a sentencing hearing on December 3, 1997, following completion of the PSIR. Although neither party made any objections to the PSIR, Comstock requested that his federal sentence be imposed to run concurrently with his two undischarged California state sentences. At the sentencing hearing, the district court adopted the factual findings in the PSIR and proceeded to sentence Comstock using the November 1, 1995, version of the federal Sentencing Guidelines. The court first grouped the bank fraud and credit card fraud counts together, resulting in a base offense level of six. See U.S. Sentencing Guidelines Manual §§ 2F1.1, 3D1.2(d)

(1995). Next, the court determined that the total amount of loss attributable to the federal fraud offenses was $35,398.59, requiring a four-level enhancement to Comstock's offense level. See id. § 2F1.1(b)(1). The court then added a two-level enhancement to Comstock's offense level because his offenses involved more than minimal planning or a scheme to defraud more than one victim. See id. § 2F1.1(b)(2). After finding that Comstock had accepted responsibility for his criminal conduct, the court applied a two-level reduction, see id. § 3E1.1(a), resulting in an offense level of ten. The court next determined that Comstock's criminal history, including his existing California state law convictions, placed him in criminal history category VI. These calculations resulted in a sentencing range of 24 to 30 months. See id. Ch. 5, Pt. A (Sentencing Table). The court rejected Comstock's request for a concurrent sentence pursuant to section 5G1.3(c), p.s., and ordered him to serve a 30-month sentence to run consecutively to his undischarged state sentences. The court also required Comstock to pay $17,607.62 in restitution.

II.

Comstock's only argument on appeal is that the district court erred in using the 1995 version of section 5G1.3(c) of the Sentencing Guidelines to deny his request for concurrent sentences,[1] rather than the 1993 version of section 5G1.3(c), which was in effect at the time Comstock committed his offenses. Comstock claims that this resulted in a violation of the Ex Post Facto Clause of the United States Constitution, see U.S. Const. art. I, § 9, cl. 3, because his sentence under the 1995 Guidelines is harsher than that which he would have received under the 1993 Guidelines. Comstock's argument

---

[1]We note that the district court sentenced Comstock on December 3, 1997, so the then-current version of the Guidelines was actually the November 1, 1997 version, and not the 1995 version used by the court. See USSG § 1B1.11(a) (1997). Nevertheless, this oversight is immaterial for purposes of this appeal because § 5G1.3 was the same in both the 1995 and 1997 versions of the Guidelines. Compare USSG § 5G1.3 (1995), with USSG § 5G1.3 (1997).

is dependent upon his contention that under the 1993 version of section 5G1.3 at least part of his sentence would be ordered to run concurrently, rather than consecutively, with his undischarged state sentences. While we review the district court's application of the Sentencing Guidelines de novo, United States v. Gullickson, 981 F.2d 344, 346 (8th Cir. 1992), we also are required by the statute to give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(d).

Comstock concedes that he raises his ex post facto claim for the first time on appeal. Therefore, we review his claim for plain error. See Fed. R. Crim. P. 52(b). Under such review, we examine whether the district court committed plain error and, if so, then determine if it affected Comstock's substantial rights. United States v. Olano, 507 U.S. 725, 735 (1993). If there was plain error and substantial rights were affected, we then exercise our discretion to vacate Comstock's sentence only "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (internal quotations and alterations omitted).

A 1995 amendment to section 5G1.3(c) changed the methodology used by a district court in sentencing a defendant with a prior undischarged term of imprisonment. See USSG App. C, Amend. 535 (1995). We first determine whether the district court's application of the 1995 version of section 5G1.3(c) in sentencing Comstock violates the Ex Post Facto Clause. "To fall within the ex post facto prohibition, a law must be retrospective—that is it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment of the crime." Lynce v. Mathis, 519 U.S. 433, ___, 117 S. Ct. 891, 896 (1997) (internal quotations and citation omitted). Because an amendment to a Sentencing Guideline has the potential to increase a defendant's punishment for a crime committed prior to the amendment, "the ex post facto clause is violated if a defendant is sentenced under the Guidelines in effect at the time of sentencing when those Guidelines produce a sentence harsher than one permitted under the Guidelines in effect at the time the crime is committed." United States v. Bell, 991

F.2d 1445, 1452 (8th Cir. 1993). We now compare Comstock's potential sentence under the 1995 and 1993 versions of section 5G1.3(c) to determine whether the 1995 amendment, enacted after Comstock committed his offenses, results in a harsher punishment.

When sentencing a defendant who is subject to an undischarged term of imprisonment, a district court must apply the procedures set out in section 5G1.3. See United States v. Marsanico, 61 F.3d 666, 668 (8th Cir. 1995); Gullickson, 981 F.2d at 349. Under the 1995 version of section 5G1.3(c), Comstock's sentence could be "imposed to run concurrently, partially concurrently, or consecutively" to his undischarged state sentences "to achieve a reasonable punishment" for his federal offenses. The application notes make clear that "[t]o achieve a reasonable punishment and avoid unwarranted disparity, the court should consider the factors set forth in 18 U.S.C. § 3584." USSG § 5G1.3, comment. (n.3). Here, the district court considered these factors and concluded that Comstock's 30-month sentence should run consecutively to his undischarged state sentences in order to achieve a reasonable punishment for his federal fraud offenses. At the time of his sentencing in December 1997, Comstock had served 12 months on his 24-month undischarged state sentences. Thus, under the 1995 Guidelines, Comstock faced a total punishment on his state and federal convictions of 54 months' imprisonment (12 months already served on his concurrent state sentences, plus 12 months remaining to be served on his state sentences, plus 30 months to be served on his consecutive federal sentence).

Under the 1993 version of section 5G1.3(c), a defendant's sentence "shall be imposed to run consecutively" to an undischarged sentence "to the extent necessary to achieve a reasonable incremental punishment" for the federal offense. (Emphasis supplied). This section requires "the sentencing court to determine the total punishment for all the offenses as if USSG § 5G1.2 were applicable." Gullickson, 981 F.2d at 346; see USSG § 5G1.3, comment. (n.3) (1993). The application notes provide that after determining this total punishment, "[t]o the extent practicable, the court should consider

-5-

a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 . . . had all of the offenses been federal offenses for which sentences were being imposed at the same time." USSG § 5G1.3, comment. (n.3) (1993).

Thus, under the 1993 Guidelines, the court would sentence Comstock as if he were being sentenced on his federal and state convictions at the same time under the Guidelines. This requires the court to determine how Comstock's California convictions would be treated under the federal Sentencing Guidelines. His nonsufficient funds check convictions would be treated under section 2F1.1, the Guideline for fraud and deceit, and his burglary count would be treated under section 2B2.1, the burglary Guideline.

Section 5G1.2(b) (Sentencing on Multiple Counts) instructs the court to determine the total punishment in accordance with Part D of Chapter 3 (Grouping Multiple Counts) where, as here, none of Comstock's offenses carry a statutorily mandated consecutive sentence. Pursuant to section 3D1.2(d), Comstock's fraud and deceit offenses covered by section 2F1.1, representing his state law nonsufficient funds check convictions and federal bank and credit card fraud convictions, would be grouped together for sentencing. His other offense, the state burglary conviction covered by section 2B2.1, would be placed in a second, separate group. The fraud group would have a base offense level of six pursuant to section 2F1.1(a), and would be increased by five levels pursuant to section 2F1.1(b)(1)(F) because the amount of loss attributable to these offenses is greater than $40,000, but less than $70,000.[2]

---

[2]The amount of loss attributable to Comstock's fraud offenses is the sum of his state law nonsufficient fund check counts and his federal bank and credit card fraud counts. Comstock passed insufficient fund checks of $250.85, $829.07, $15,000, and $7,055. (See Presentence Investigation Report at 12.) The amount of loss attributable to Comstock's federal fraud offenses was $35,398.59. (See id. at 7.) Thus, the total amount of loss attributable to the fraud offenses group is $58,533.51.

Because Comstock's fraud offenses involved more than minimal planning or a scheme to defraud more than one victim, his offense level would be increased by another two levels pursuant to section 2F1.1(b)(2). Thus, his total offense level for the fraud group would have been 13.

We next determine what Comstock's offense level would have been for the second group—consisting solely of his state law burglary conviction. Comstock's burglary involved the unlawful entry into a commercial building with the intent to commit larceny. (See Presentence Investigation Report at 12.) Therefore, his base offense level for the second group would have been 12. See USSG § 2B2.1(a)(2) (1993).

Pursuant to section 3D1.4, Comstock's combined offense level for the two groups under the 1993 Guidelines would be calculated by "taking the offense level applicable to the Group with the highest offense level and increasing that offense level by" the level or levels determined by calculating a number of "Units" under the section. The group with the highest offense level, the fraud group, counts as one Unit under this section. See USSG § 3D1.4(a). An additional Unit is counted for the second group because it has an offense level one less than the fraud group. See id. The total of two Units requires a two-level enhancement to the higher group's offense level, see id. § 3D1.4, resulting in a combined offense level of 15. This combined offense level would then be decreased by two levels to account for Comstock's acceptance of responsibility. See id. § 3E1.1(a). Thus, Comstock's bottom line adjusted offense level under the 1993 Guidelines would have been 13.

We next calculate Comstock's criminal history to determine the sentencing range under the 1993 Guidelines. Because Comstock's California convictions for

nonsufficient funds checks and burglary are included as offenses for which he is being sentenced under the section 5G1.3(c) hypothetical analysis of the 1993 Guidelines, these convictions are not included in his criminal history calculation.  See United States v. Duranseau, 26 F.3d 804, 811 n.7 (8th Cir.), cert. denied, 513 U.S. 939 (1994).  Excluding these convictions results in a criminal history point total of 11, placing Comstock in criminal history category V.  An offense level 13 with a criminal history category of V results in a sentencing range of 30 to 37 months.  See USSG Ch. 5, Pt. A.

This 30- to 37-month range represents the total hypothetical sentence that Comstock would have received had he been sentenced for the California state law convictions in federal court at the same time as his federal offenses.  The government did not dispute this determination in either its brief or at oral argument.  We must now determine what portion of the 37-month maximum sentence would represent a "reasonable incremental sentence" imposed on December 3, 1997, for the federal offenses.  At the time of sentencing, Comstock had served 12 months of his state sentences and had 12 months remaining.  Thus, the maximum federal sentence the court could impose pursuant to the 1993 version of § 5G1.3(c) was 25 months (the 37-month maximum minus the 12 months already served in state prison), the first 12 months of which maximum 25-month federal sentence would be ordered to run concurrently with the undischarged portion of Comstock's state sentences.[3]  Alternatively, the district court could have imposed a consecutive 13-month sentence to be served after Comstock completed his 24-month California state sentences.[4]  Therefore, under the

---

[3]"In some circumstances such incremental punishment can be achieved by the imposition of a sentence that is concurrent with the remainder of the unexpired term of imprisonment."  USSG § 5G1.3, comment. (n.3) (1993).

[4]Id.  Because of the difficulty involved in determining on December 3, 1997, exactly how many months of the California state sentences Comstock would actually serve, the first alternative of making the 25-month federal incremental portion concurrent with the remaining California time would eliminate any uncertainty and result in the serving of the full federal portion.

1993 Guidelines, Comstock would have faced a maximum total punishment of 37 months' imprisonment for his California and federal convictions, 17 months less than the 54 months of total imprisonment he actually received under the 1995 Guidelines. This increase in punishment is caused by the district court's application of the 1995 change in federal sentencing law made after Comstock had committed his crimes. Therefore, applying the 1995 Guidelines to sentence Comstock is a clear violation of the Ex Post Facto Clause. See Bell, 991 F.2d at 1452.

The government argues the district court did not violate the Ex Post Facto Clause because the court could have sentenced Comstock to the 30-month consecutive sentence resulting in 54 months of total imprisonment under the 1993 Guidelines by departing upward. A district court may depart upward when sentencing pursuant to section 5G1.3 when it finds aggravating circumstances that are not adequately taken into consideration by the Guidelines and provides specific reasons for the departure. See United States v. Muzingo, 999 F.2d 361, 363 (8th Cir.), cert. denied, 510 U.S. 1002 (1993); Duranseau, 26 F.3d at 811. The government suggests that the district court would have departed upward because Comstock's criminal history does not adequately reflect the seriousness of his criminal past. See USSG § 4A1.3. The record shows that the district court sentenced Comstock at the top of the sentencing range primarily because of his extensive criminal record. (Sent. Tr. at 7-8). However, because it is unclear from the record whether the court also would have found that Comstock's criminal past justified an upward departure, we reject the government's argument. See Marsanico, 61 F.3d at 669 (noting that court may depart upward after applying § 5G1.3(c), but remanding for resentencing because record was unclear regarding whether the court would have departed upward).

Finally, we must determine whether the ex post facto violation constitutes plain error requiring us to vacate Comstock's sentence.  See Olano, 507 U.S. at 735-36.  The violation is error and Comstock's substantial rights were clearly affected because, as he was sentenced,  he would end up serving 17 more months in prison than he might have served had he been sentenced absent the error.  We also easily conclude that this error "seriously affect[ed] the fairness" of the sentencing proceedings.  Id. at 736; see also Marsanico, 61 F.3d at 668 (not correcting such a 21-month sentencing error "would result in a miscarriage of justice").  Therefore, Comstock is entitled to resentencing under the correct version of the Guidelines.

## III.

Accordingly, we vacate Comstock's sentence and remand the case to the district court for resentencing under the 1993 Sentencing Guidelines.  We express no view on the merits of the government's anticipated upward departure motion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.