UNITED STATES of America,
Plaintiff–Appellee,

v.

Rey CHEA, aka T–Bone, Defendant–Appellant.

No. 99–10431.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 2000

Filed Nov. 16, 2000

Karen L. Landau, Oakland, California, for the defendant-appellant.

Laurie Kloster Gray, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

Before: REINHARDT, BRUNETTI, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to decide whether failure to consider a defendant's undischarged term of imprisonment and Sentencing Guideline Section 5G1.3(c) in imposing sentence requires resentencing.

Rey Chea appeals both his sentence and conviction for conspiracy to commit and committing three armed robberies of computer components distributors in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c). With respect to his sentence, Chea contends that the court erred by failing to consider Sentencing Guideline § 5G1.3(c) in light of his prior undischarged state term of imprisonment. Unfortunately, § 5G1.3(c) was not on the district court's radar screen, because neither Chea, the Presentence Report, nor the government called the undischarged term of imprisonment or its significance to the court's attention. Nevertheless, because it may matter and we cannot say from the record that the court would have imposed the same sentence had it focused on what § 5G1.3(c) has to say, we must conclude that there is plain error. Assuming that he will be resentenced, Chea also contends that the court should apply the 1994 version of § 5G1.3(c) in effect at the time of his offenses, rather than the 1998 version in effect at the time of sentencing, because the former is more favorable to him. We agree that applying the 1998 version as contrasted with the 1994 version raises ex post facto concerns.

As Chea's evidentiary challenges lack merit, we affirm his conviction but reverse and remand for resentencing.

## I

Van Thieng Di began robbing computer chip companies in late 1994 or early 1995, eventually becoming a "crew chief" who started recruiting his own "crew members" to commit other computer chip robberies. He brought Chea on board in early 1995. Their modus operandi was for the "lead man" or "action man" to carry a gun, be the first to enter the targeted business, and issue instructions to the employee/victims inside the business. Other participants would restrain victims by tying their feet and hands. Led by Di, Chea and other co-conspirators committed the armed robbery of Multi Connection Technology (MCT) on March 9, 1995, the armed robbery of truck driver Winston Tsai of Empire Computer on March 29, 1995, and the armed robbery of ASA Computers on April 6, 1995. Chea was the lead man in the MCT robbery, was armed for the Empire robbery, and was also the lead man for the ASA robbery.

At trial, two witnesses testified about two uncharged computer robberies that occurred in early 1995, the Unigen robbery (which was the first computer company that Chea robbed with Di) in January, 1995 in Fremont, California, and the G & G robbery in Huntington Beach in February 10, 1995. In this robbery Di was crew chief and Chea was the action man.

Chea was convicted for the three charged robberies, and sentenced to 188 months on the conspiracy and robbery charges, each term to be served concurrently. The district court also sentenced Chea to an additional forty-five (45) years total for the three § 924(c) counts, to be served consecutively to the conspiracy and robbery counts.

He timely appeals.

## II

Chea argues that the district court should not have admitted evidence of his involvement in the two prior uncharged robberies, which were also of computer component businesses. A district court's admission of evidence under Federal Rule of Evidence 404(b) is reviewed for an abuse of discretion. *United States v. Nelson*, 137 F.3d 1094, 1106 (9th Cir.), *cert. denied*, 525 U.S. 901, 119 S.Ct. 232, 142 L.Ed.2d 190 (1998). There was none here.

Rule 404(b) forbids admission of evidence of a person's other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith" but provides that such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The "rule is one of inclusion" in that "other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982).

We have articulated a four-part test to assist district courts in gauging the admissibility of evidence under Rule 404(b):

> evidence of prior or subsequent criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*United States v. Luna*, 21 F.3d 874, 878 (9th Cir.1994). If the evidence meets this test under Rule 404(b), "the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Nelson*, 137 F.3d at 1107.

Chea disputes only the first and fourth prongs, namely, the materiality of the evidence and the similarity of the alleged other wrongs. Yet "the evidence was relevant to [Chea's] state of mind: his knowledge, intent, planning, and prepara-

tion," *Nelson, id.* at 1107 (robbery case also charged under 18 U.S.C. §§ 1951(a) and 924(c)). *See United States v. Jones,* 982 F.2d 380, 382 (9th Cir.1992) (evidence of defendant's involvement in previous marijuana smuggling operations admissible in case charging conspiracy to import marijuana); *United States v. McKoy,* 771 F.2d 1207, 1214 (9th Cir.1985) (evidence of prior dealings in stolen merchandise admissible in conspiracy case "to show the background and development of the conspiracy").

Here, all of the charged and uncharged robberies were similar in that they were armed, takeover-style robberies of computer businesses in which the victims were told to lie down and were then tied up. In every robbery the robbers were all Asian, the robbers always loaded the stolen computer product into vans, and Chea's role was similar in all of the robberies. Thus, to the extent that a showing of similarity was required to justify the evidence, the uncharged robberies were sufficiently similar to the charged robberies to make the existence of Chea's knowledge, intent, planning and preparation for the robberies, and his association with the other co-conspirators, more probable than it would be without the evidence. *See Nelson,* 137 F.3d at 1107.

The district court carefully weighed the probative value versus prejudicial effect of the evidence, and indeed, excluded evidence of two subsequent robberies on the basis of prejudice. Limiting instructions were also given. In short, the court acted well within its discretion in admitting evidence of the two prior robberies.

### III

■ At the time of sentencing in this case, Chea had not yet completed a nine year, eight month (116 months) state sentence for an armed robbery of a computer business that he and others had committed. The criminal history section of Chea's Presentence Report (PSR) mentioned this prior state conviction, but the Probation Office did not apply (or mention) U.S.S.G. § 5G1.3, which sets forth how to determine the sentence for defendants who are subject to an undischarged term of imprisonment. Pursuant to 18 U.S.C. § 3584(a), in the absence of an order to the contrary, a federal sentence is to run consecutively to a prior state sentence.

Chea now challenges his sentence on two related grounds. First, he argues that because he in fact was serving an undischarged term of imprisonment for a state conviction, the district court plainly erred in sentencing him without considering that sentence and without reference to any version of § 5G1.3. Second, he argues that the 1994 version of § 5G1.3 that was in effect at the time of the offense is the applicable version, rather than the 1998 version that was in effect at the time of sentencing, because it is more favorable to him.

■ Because Chea raises both challenges for the first time on appeal, our review is for plain error. Fed.R.Crim.P. 52(b); *United States v. Vences,* 169 F.3d 611, 613 (9th Cir.1999) (claim that court failed adequately to express reasons for sentence reviewed for plain error); *United States v. Comstock,* 154 F.3d 845, 847 (8th Cir.1998) (reviewing ex post facto claim regarding sentence under § 5G1.3 for plain error). "Plain error is found only where there is (1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Vences,* 169 F.3d at 613 (quotations omitted).

### A

Section 5G1.3 contains three subsections that govern imposition of sentence on a defendant who is subject to an undischarged term of imprisonment. The parties agree that § 5G1.3(c) controls the present situation. This guideline has been amended over time, but the guidelines themselves and our previous decisions make clear that both the 1994 version in

effect at the time of the offenses and the 1998 version in effect at the time of sentencing require the district court to consider an undischarged term of imprisonment.

### 1. *1994 Version*

■ The 1994 version of § 5G1.3(c), which Chea argues should have been applied in this case, provided as follows:

> (c) (Policy Statement) ... [T]he sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

In the commentary, a specific methodology is set out for determining a "reasonable incremental" punishment:

> To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time.

Sentencing Guidelines § 5G1.3(c), Application Note 3. As further explained in the Application Notes, and illustrated by example, the court is to calculate a hypothetical sentence that would result if the federal offense and the offense resulting in the undischarged term of imprisonment were sentenced at the same time, and then determine a reasonable incremental punishment in light of the undischarged term. *Id.*

■ In *United States v. Redman,* 35 F.3d 437 (9th Cir.1994), *cert. denied,* 513

U.S. 1120, 115 S.Ct. 922, 130 L.Ed.2d 802 (1995), we held that the district court must follow the § 5G1.3(c) methodology, or expressly state why it is not doing so.[1] In *Redman,* the defendant was serving a state sentence for theft at the time of his federal sentence for conspiracy to aid and assist an escape. Using a version of § 5G1.3 that was the same in all key respects as that in effect in 1994, the district court imposed an 18–month sentence, to run consecutively to his state sentence. The district court "performed all of the calculations suggested by the guidelines," but concluded that "no incremental punishment for his federal offense" would result. *Id.* at 439. The court then explained on the record that it was not adhering to the guideline methodology, determining instead that 18 months was a reasonable incremental punishment. In affirming, we noted that a district court "may decline to impose the sentence suggested by the commentary's methodology, if it has a good reason for doing so." *Id.* at 441. However, the court "must attempt to calculate the reasonable incremental punishment that would be imposed under the commentary methodology," but if it then decides to use a different methodology to calculate the sentence, "the court must ... state its reasons for abandoning the commentary methodology in such a way as to allow us to see that it has considered the methodology." *Id.* Because the district court had done so, there was no error.

Correspondingly, when the required determinations have not been made, we have remanded for resentencing. In *United States v. Garrett,* 56 F.3d 1207 (9th Cir. 1995), the district court imposed an 18–month sentence, to run concurrently with a state sentence expected to last 24 months (of which 15 months had been served).

---

**1.** "To the extent that they interpret substantive guidelines and do not conflict with them or with any statutory directives, the policy statements contained in the Guidelines bind federal courts." *Redman,* 35 F.3d at 439 (citing *Williams v. United States,* 503 U.S. 193, 201, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)),

*cert. denied,* 513 U.S. 1120, 115 S.Ct. 922, 130 L.Ed.2d 802 (1995). "Similarly, ... the commentary is binding on federal courts unless it is plainly erroneous or inconsistent with the guideline." *Id.* (citing *Stinson v. United States,* 508 U.S. 36, 42–43, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)).

Although the court determined that the federal sentence should be concurrent with the undischarged portion of the state sentence, it did not determine whether the nine months of incremental punishment was reasonable, nor did it calculate a sentence that would approximate the total punishment had all offenses been federal offenses being sentenced at the same time.

While we have not previously considered whether failure to apply § 5G1.3 is plain error, other circuits have, and have concluded that it is. For example, in *United States v. Brassell*, 49 F.3d 274 (7th Cir. 1995), the Seventh Circuit found plain error with respect to the failure to apply the same § 5G1.3(c) methodology Chea contends should have been applied in this case. As here, the defendant there argued for the first time on appeal that the district court erred in imposing his federal sentence to run consecutively to his undischarged state sentences. The Court of Appeals for the Seventh Circuit remanded because the district court made no finding as to the appropriate total punishment, and did not estimate what the total sentence would have been if the three convictions had been federal convictions and all had been sentenced at the same time. In doing so it observed that a different sentence might well have resulted from using the Guidelines methodology.

Similarly, in *United States v. Whiting*, 28 F.3d 1296 (1st Cir.), *cert. denied*, 513 U.S. 956, 115 S.Ct. 378, 130 L.Ed.2d 328 (1994), the court held that imposing a consecutive sentence under the 1991 version of § 5G1.3 was plain error. The district court had "departed from the structure imposed by the guidelines" in that instead of making the appropriate calculations under § 5G1.3, "the district court computed a sentence for the [federal] offense alone and

then made a single yes-or-no choice between a wholly concurrent and a wholly consecutive sentence." *Id.* at 1311. Although noting that the district court could have arrived at the same result after using the § 5G1.3 methodology, viewing the sentence as a "binary choice" of either "consecutive or concurrent" amounted to plain error. *Id.* at 1311–12. In the court's view, it was enough that "the error probably affected" the sentence and that it was "very likely that the resentencing could produce a different and more favorable sentence." *Id.* at 1312.[2]

Here, application of the 1994 version of § 5G1.3 similarly could impact the length of Chea's sentence. Performing the required calculations under the 1994 version, and depending on whether Chea's hypothetical offense level for the state conviction were to be enhanced for abduction of a victim, Chea's incremental punishment for the federal conspiracy and robbery offenses would be either 72 months or 94 months.[3] Chea correctly contends that this incremental punishment could have been achieved by (a) imposing a federal sentence of 72 or 94 months to run consecutively with the state sentence or (b) imposing a 188 or 210 month sentence, with 116 months to run concurrently and 72 or 94 months to run consecutively. In either event, consideration of his undischarged state term of imprisonment under § 5G1.3(c) could result in a shorter sentence (116 months less, the length of his state sentence) than the purely consecutive 188–month federal sentence he received for the conspiracy and robbery charges.

### 2. *1998 Version*

▮ The 1998 version of § 5G1.3(c), which became effective November 1, 1995, provided:

2. The Second and Fifth Circuits have found no plain error in cases where the district courts ultimately did consider the undischarged state sentence. *See United States v. Margiotti*, 85 F.3d 100, 104–05 (2d Cir.), *cert. denied*, 519 U.S. 940, 117 S.Ct. 324, 136 L.Ed.2d 238 (1996); *United States v. Krout*, 66 F.3d 1420, 1435 (5th Cir.1995), *cert. denied*,

516 U.S. 1136, 116 S.Ct. 963, 133 L.Ed.2d 884 (1996).

3. Chea calculates these amounts based on a hypothetical sentence of either 188 or 210 months (depending on offense level) minus the 116 months for the state sentence.

(c) (Policy Statement) ... [T]he sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

Both parties agree that this Guideline no longer requires the district court to perform the methodology that we discussed in connection with the 1994 version. Rather, as explained in the amended Application Notes:

the court should consider the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a)) and be cognizant of: (a) the type ... and length of the prior undischarged sentence; (b) the time served on the undischarged sentence and the time likely to be served before release; (c) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and (d) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

Sentencing Guidelines § 5G1.3, Application Note 3; 18 U.S.C. § 3584 addresses the imposition of concurrent or consecutive terms and provides that the court "in determining whether the terms imposed are to be ordered to run concurrently or consecutively, *shall* consider ... the factors set forth in section 3553(a)." *Id.* § 3584(b). (emphasis added). Section 3553(a) lists numerous factors, such as "pertinent policy statement[s] issued by the Sentencing Commission" and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(5) & (a)(6).

Although the 1995 amendments changed the substance of § 5G1.3(c), we have made clear that under the post-amendment version district courts are still required to consider a defendant's undischarged term of imprisonment. In *United States v. Luna–Madellaga,* 133 F.3d 1293 (9th Cir.),

*cert. denied,* 524 U.S. 910, 118 S.Ct. 2073, 141 L.Ed.2d 148 (1998), the district court correctly applied the 1995 version of § 5G1.3,[4] considered the Application Note 3 factors, and sentenced the defendant to a consecutive term, determining that this would be a reasonable punishment. The defendant claimed error in the court's failure to calculate a hypothetical sentence under *Redman.* We disagreed, holding that the 1995 amendments to § 5G1.3 eliminated the need to calculate a hypothetical sentence. But we noted that "[s]entencing courts are instead *required* to give careful consideration to each of the factors specifically enumerated in the guideline and determine, based on those factors, whether a concurrent, partially concurrent, or consecutive sentence will achieve a 'reasonable punishment' and 'avoid unwarranted disparity.'" *Id.* at 1296 (emphasis added). *See also United States v. Kim,* 196 F.3d 1079, 1084 (9th Cir.1999) (reiterating that "[s]entencing courts are required to give careful consideration to each of the factors specifically enumerated in the guidelines" and to determine a reasonable punishment) (citing *Luna* ).

Thus, under the post-amendment version of § 5G1.3, district courts are "required" to consider the enumerated factors and determine a reasonable punishment. The factors include the Sentencing Commission's policy statements, which direct the courts to "be cognizant of" an existing undischarged term of imprisonment. Here, there is no dispute that the district court did not consider § 5G1.3 or the fact that Chea was subject to an undischarged state sentence.

### B

The government argues that the error is not plain error because the court could have reached the same result even if it considered § 5G1.3. While this may be true, we cannot say that it would have done so on the state of the record. Be-

---

4. The 1995 version is identical to the 1998 version.

cause the district court gave *no* consideration to the undischarged state sentence under any version of the guideline, and made no comment on concurrent versus consecutive terms, it is impossible to tell what the district court would have done. Other courts have reached similar conclusions when the record is unclear. *See Whiting,* 28 F.3d at 1311–12 (finding plain error under 1991 version where the district court had "departed from the structure imposed by the guidelines," even though it was possible that same result could obtain on remand); *United States v. Comstock,* 154 F.3d 845, 850 (8th Cir.1998) (rejecting government's argument that no ex post facto violation occurred because court could have reached the same sentence through upward departure "because it is unclear from the record whether the court also would have found that Comstock's criminal past justified an upward departure").

While the district court retains discretion to impose what it believes to be a reasonable sentence, proper consideration of Chea's 116–month state sentence likely could result in a lower overall sentence. Chea's prior state conviction for robbing a computer business in 1995 is closely related to the robbery conspiracy in this case. Unlike the "wholly unrelated" crimes in a case such as *Redman,* where the district court elected not to adopt the recommendation yielded by the 1994 version of the guidelines, the district court here could find it unnecessary to impose more than the "reasonable incremental penalty" for these related crimes under the 1994 version. Likewise, the court could give some weight to the state sentence in determining a "reasonable punishment" under the 1998 version. Therefore, as we cannot say that Chea's substantial rights are not affected, resentencing is required no matter which version of § 5G1.3 is appropriately applied, 1994 or 1998.

**5.** We consider whether the 1994 version should be applied on resentencing because

## IV

The question remains which version of § 5G1.3(c) the district court should apply on resentencing.[5] Generally, "the district court must apply the version of the Guidelines which is in effect on the date of sentencing. . . . However, if use of those Guidelines would violate the Ex Post Facto Clause, the defendant must be sentenced, instead, under the version of the Guidelines that was in effect when he committed his offense." *United States v. Johns,* 5 F.3d 1267, 1269 (9th Cir.1993); *see also* 18 U.S.C. § 3553(a)(4)(A) (court "shall consider" the guidelines "that are in effect on the date the defendant is sentenced"). The parties agree that the 1994 version was in effect at the time of the offenses in early 1995, and the 1998 version continues in effect now.

"A criminal law is ex post facto if it satisfies two requirements: it must apply retrospectively to events occurring before its enactment, and it must disadvantage the defendant affected by it." *United States v. Restrepo,* 903 F.2d 648, 655 (9th Cir.1990), opinion withdrawn in part as to other grounds, 946 F.2d 654 (1991). First, there is no ex post facto violation "if an amendment to the Guidelines merely clarifies its existing substance as opposed to changing its substance." *Johns,* 5 F.3d at 1269. Second, we have previously held the "disadvantaged" prong to be satisfied where the guidelines are "changed . . . in a way that made the punishment for crimes more onerous for a defendant. . . ." *Id.* at 1272.

Chea correctly argues that the 1995 amendment to § 5G1.3(c) was a substantive change as opposed to a clarification. While the Sentencing Commission characterized the amendments to §§ 5G1.3(a) and (b) as clarifying, it made clear that this was not the case for the amendment to § 5G1.3(c). U.S. Sentencing Guidelines, Amendment 535. Rather,

the issue is one of law that should hopefully guide the parties and the court on remand.

the Commission stated that the amendment to subdivision (c) was designed to "afford[ ] the sentencing court additional flexibility." *Id.* Indeed, in *Luna–Madellaga,* we noted at length the differences between the current version of § 5G1.3 and previous versions, holding that the 1995 amendment "abandon[ed] the requirement that courts calculate and consider § 5G1.2 hypothetical sentences in favor of 'something different'...." 133 F.3d at 1296. In other words, under *Redman* and applicable law governing the older version, the district court was required to consider the methodology and needed a "good reason" for not following it. Under the 1998 version, the court is required only to give due consideration to the state sentence and the other factors set forth in Section 3553(a). As a result, the 1994 version of § 5G1.3(c) is more favorable to Chea.

We are persuaded by the Eighth Circuit's reasoning in *United States v. Comstock,* 154 F.3d 845 (8th Cir.1998), that the Ex Post Facto Clause is implicated in this circumstance. In *Comstock,* the defendant had requested that his federal sentence run concurrently with his undischarged state sentences. On appeal, he argued that the district court committed an ex post facto violation by using the 1995 version of § 5G1.3(c) rather than the 1993 version in denying his request. These versions are the same as those at issue here. The court "compare[d the defendant's] potential sentence" under the two versions to determine whether the later version of § 5G1.3(c) "results in a harsher punishment." *Id.* at 848.

Finding that the increase in punishment was "caused by the district court's application of the 1995 change," the court in *Comstock* held that this was a clear violation of the Ex Post Facto Clause. *Id.* at 850. The court rejected the government's argument (made here as well) that the district court could have arrived at the same sentence under the 1993 version, "because it is unclear from the record whether the court" would have actually done so. *Id.* Finally, the court determined that this was plain error "because, as he was sentenced, he would end up serving 17 more months in prison than he might have served had he been sentenced absent the error." *Id.*

The government argues that an ex post facto analysis can be avoided altogether because Chea did not object to the PSR, which used the 1998 version of the Guidelines. It relies on *United States v. Gilcrist,* 106 F.3d 297, 301 (9th Cir.1997), where we declined to consider an ex post facto argument. There, however, the defendant initially asked the court to apply the 1991 version of the guidelines, but later at sentencing expressly agreed to use of the 1994 manual. We held on appeal that the defendant "abandoned his ex post facto argument." *Id.* at 302. Chea, in contrast, did not affirmatively waive consideration of the 1994 version of the guidelines or abandon an ex post facto argument; the PSR simply did not address the issue and Chea did not raise it. For this reason, Chea is not precluded from urging that the 1994 version should be applied.

Thus, in resentencing Chea and giving due consideration to the undischarged state term of imprisonment, the district court should apply the 1994 version of § 5G1.3(c) and its required methodology. In the event that § 5G1.3(c) is amended yet again before Chea is resentenced, the district court should, of course, conduct its own ex post facto analysis and apply whichever version is more favorable to Chea, be it the 1994 version or a new version in effect at the time of resentencing.

AFFIRMED IN PART; VACATED AND REMANDED IN PART FOR RESENTENCING.