# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2127

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| George E. Kline, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 10, 2002

Filed:  March 12, 2003

_____

Before McMILLIAN, FAGG, and BYE, Circuit Judges.

_____

PER CURIAM.

George Kline appeals the district court's sua sponte application of a two-level enhancement for use of sophisticated means in a securities fraud case, pursuant to United States Sentencing Guideline (U.S.S.G.) § 2F1.1(b)(6)(C) (now § 2B1.1(b)(8)). Because the district court failed to make specific findings of fact in support of the enhancement, meaningful appellate review is not possible. We therefore reverse and remand for resentencing.

# I

On July 3, 2001, George Kline pleaded guilty to six counts of a 58-count indictment charging him with various mail and securities fraud violations. Kline also pleaded guilty to a one-count information charging him with money laundering related to his mail and securities fraud violations. The indictment charged a conspiracy dating from October 1995 until March 2001.

Kline's fraudulent conduct consisted of making more than 150 illegal securities transactions through his company, Protective Mouthguards, Inc. (PMI). Kline made certain stock acquisitions based on insider information he obtained while sitting on the boards of several prominent companies. He also received insider information from two friends, Robert Hibbs and Bruce Le Duc. Kline shared this information with his sons, Erich and Chris, as well as Hibbs and Le Duc. Kline failed to report his PMI trades as insider transactions with the Securities and Exchange Commission (SEC). In sum, the conspiracy between the five participants garnered more than $11 million in illegal profit, with at least $2.5 million attributable to Kline.

After Kline pleaded guilty, a presentence report (PSR) was prepared calculating the offense level under the sentencing guidelines as follows: a base offense level of 8 under § 2F1.2[1] for insider trading, plus 13 additional levels under § 2F1.1(b)(1)(N) for a loss of between $2.5 million and $5 million, plus 4 additional levels under § 3B1.1 for Kline's leadership role in the offense, plus another 2 levels under § 3B1.3 for abuse of a position of special trust, less 3 levels under § 3E1.1 for acceptance of responsibility. Significantly, ¶ 64 of the PSR stated "[i]t was determined that sophisticated means were not involved to execute this scheme; therefore, a 2-level increase is not recommended. § 2F1.1(b)(6)." Absent application of the sophisticated

---

[1]All guideline references are to those in effect prior to November 2001. The fraud guidelines have since been amended and are now found at Part 2B.

means enhancement, Kline's final offense level was 24, which called for a sentencing range of 51 to 63 months under criminal history category I.

At the sentencing hearing held on April 17, 2002, the prosecutor agreed with the recommendation made in the PSR, stating "[w]e understand the Guideline range to be 51 to 63 months, Your Honor." App. 27-8. Nonetheless, the district court announced during the sentencing hearing it was adding two levels under 2F1.1(b)(6) for use of sophisticated means, resulting in a final offense level of 26 and a sentencing range of 63-78 months. The district court justified the enhancement by stating:

> The defendant's mechanisms and methods were highly sophisticated. He did so using skills that he'd acquired over a long period of time, and under those circumstances, notwithstanding the fact that it was not recited in the [presentence report], I felt it appropriate to . . . place those within the . . . Guideline calculus.

App. 31.

Kline's attorney was given the opportunity to object to the district court's sua sponte application of the enhancement, but did not. Id. The district court ultimately imposed a sentence of 78 months, at the high end of the enhanced sentencing range.

On appeal, Kline raises two issues, acknowledging both issues are subject to plain error review due to his failure to object to the enhancement at the time of sentencing. First, Kline argues the district court was required to give notice of its intent to add the enhancement, and that his due process rights were violated because he was deprived of a meaningful opportunity to mount a legal or factual challenge to the application of the enhancement. Second, Kline argues the lack of specific findings to support the application of the sophisticated means enhancement deprives this court of the opportunity to review the district court's determination. Kline argues

this is particularly significant because the sophisticated means enhancement was not incorporated into the guidelines until November 1, 1998. Kline was charged with fraudulent conduct dating back to October 1995. Thus, Kline argues the district court violated the ex post facto clause by considering conduct that occurred prior to November 1, 1998.

II

Kline concedes, and we agree, that his failure to object to the district court's sua sponte application of the sophisticated means enhancement, or request more time to contest the enhancement, subjects his appeal to the plain error standard of review. United States v. Day, 998 F.2d 622, 624 (8th Cir. 1993). Under the plain error standard, we will reverse only when the error is obvious, affects a defendant's substantial rights, and seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Evans, 272 F.3d 1069, 1080 (8th Cir. 2001).

Three principles guide our conclusion that Kline has satisfied the plain error standard of review. First, it is clear Kline's fraudulent conduct straddled the effective date of the sophisticated means enhancement. The ex post facto clause prohibits the use of a guideline not in effect when the defendant's conduct occurred if it produces a sentence harsher than one permitted under the guidelines in effect at the time the crime occurred. United States v. Zimmer, 299 F.3d 710, 717 (8th Cir. 2002). Second, a violation of the ex post facto clause satisfies the plain error standard because a defendant is sentenced to more time than he might have served absent the error. United States v. Comstock, 154 F.3d 845, 850 (8th Cir. 1998). Finally, a "district court must make sentencing findings sufficient to permit meaningful appellate review." United States v. Alaniz, 148 F.3d 929, 936 (8th Cir. 1998) (citing United States v. Fetlow, 21 F.3d 243, 248 (8th Cir. 1994)).

-4-

The district court failed to make findings sufficient for us to determine whether it relied upon conduct which occurred prior to the effective date of the sophisticated means enhancement. To the extent the district court made findings of fact, they indicate the district court relied upon pre-November 1, 1998, conduct in violation of the ex post facto clause. The district court found that Kline acquired his "sophisticated" fraudulent skills "over a long period of time." This finding suggests the district relied upon the entire period of Kline's fraudulent conduct (October 1995 to March 2001) to support the application of the enhancement. In addition, the district court adopted the findings of the PSR as its findings of fact. App. 27. The PSR includes many references to conduct that occurred prior to November 1, 1998, which also indicates the district court considered conduct that occurred prior to the effective date of the enhancement.

Nothing in the record indicates the district court limited itself to consideration of post-November 1, 1998, conduct when applying the sophisticated means enhancement. Therefore, a remand is appropriate for the district court to reconsider the application of the enhancement based solely upon conduct that occurred after November 1, 1998.

In light of our remand, we need not address Kline's separate claim that his due process rights were violated by the district court's sua sponte application of the enhancement.

BYE, Circuit Judge, concurring.

The district court's limited comments in support of the sophisticated means enhancement provide no guidance to us in reviewing the propriety of the enhancement. Other than the conclusory statement that Kline's "mechanisms and methods were highly sophisticated," the only finding the district court made was that Kline acquired his fraudulent skills "over a long period of time." But the "long period

of time" at issue included more time prior to the effective date of the sophisticated means enhancement than after. The district court's inadequate fact findings are our only barrier to determining whether application of the enhancement violated the ex post facto clause. Under these circumstances, I agree the interests of justice require a remand. I write separately to add that I do not believe a sophisticated means enhancement is justified based on my review of the record. I agree with the probation officer who prepared the PSR, as well as the prosecuting attorney who initially agreed that sophisticated means were not involved.

First, the fact that Kline's fraud occurred over a long period of time is not enough to apply the enhancement. Extensive fraud is not necessarily sophisticated fraud. The guidelines already account for the extent of Kline's fraud by adding 13 levels to his base offense level under § 2F1.1(b)(1)(N).

On appeal, the government argues there is "no dispute about Kline's long-standing use of PMI and other corporate shells to perpetrate his fraud scheme and avoid detection." Although the comments to the guidelines suggest the sophisticated means enhancement "ordinarily" applies when a defendant hides assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts, U.S.S.G. § 2B1.1 comment. n. 6 (C), I find no evidence in the record to support the government's claim that PMI was a "corporate shell."

Kline's plea agreement merely describes PMI as "an investment company solely owned and controlled by defendant." Plea Agreement at 4. A solely-owned investment company is not necessarily a corporate shell. The PSR likewise refers to PMI as a "personal holding company" owned solely by Kline. PSR at ¶ 15. A solely-owned personal holding company does not equate to a corporate shell either. I found no information within the record which indicates PMI was anything other than a legitimate holding company, used in an illegitimate manner by Kline.

Furthermore, because the district court made inadequate fact findings, we do not know whether Kline's use of PMI was even the basis for applying the enhancement, or whether the district court based the enhancement on some other aspect of Kline's conduct. As an appellate court, we should not be left guessing whether this, or that, was the reason for taking away twelve to twenty-seven months of a person's liberty. The district court has an obligation to specifically indicate why it believes the enhancement applies, so that we can engage in a meaningful review of the issue.

The government also alleges Kline used "other corporate shells" to perpetrate his fraud. I found references in the record to three other entities Kline used to engage in fraudulent conduct. Kline admitted using "a brokerage account in the name of Etre Corporation to secretly purchase 26,000 shares of Advance Circuits stock" and that he was "the founder and President of Etre Corporation." Plea Agreement at 2-3. But there is no evidence Etre Corporation was a corporate shell. More significantly, this conduct took place in "the late summer of 1989," id. at 2, and therefore before the sophisticated means enhancement took effect and prior to the conspiracy charged in the indictment.

Kline also admitted "in late August 1989, he utilized a brokerage account registered in the name of CK Investments, Inc. to secretly purchase approximately 45,000 shares of Advance Circuits stock." Id. at 3. Once again, there is no evidence in the record that CK Investments, Inc. was a corporate shell. This conduct also occurred well before the effective date of the sophisticated means enhancement, and prior to the conspiracy charged in the indictment.

Finally, Kline admitted that "on September 23, 1998, [he made] a purchase of 10,000 shares of Tower stock . . . in his wife's brokerage account." Id. at 6. Once again, there is no evidence in the record that Kline's wife's brokerage account was a

corporate shell, and this conduct also took place prior to the effective date of the sophisticated means enhancement.

The PSR also refers to the fact that Kline forged signatures of a former business associate to open PMI brokerage accounts and to help avoid certain SEC reporting requirements in relation to insider transactions. PSR at ¶ 25. The indictment indicates, however, this conduct occurred in November 1989, February 1991, and August 1994. Indictment at 4. Thus, the forgery also took place before the sophisticated means enhancement took effect, and prior to the conspiracy charged in the indictment.

It is realized Kline hid his transactions by failing to report them to the SEC, but such does not convince me that conduct alone justifies application of the sophisticated means enhancement. It does not require a great deal of sophistication to neglect to file a report with the SEC. That type of conduct would be involved in many insider trading cases. So, unless application of the enhancement for sophisticated means is to be a foregone conclusion in *every* insider trading case where the defendant fails to report a transaction to the SEC, some other sophisticated means should be required to justify the enhancement.

In sum, this case appears to me to be a run-of-the-mill insider trading case. Kline's fraudulent conduct was certainly extensive, both as to the length of time during which it was conducted, and the amount of illegitimate funds garnered. But the fraud involved does not appear to me to be any more sophisticated than five individuals sharing inside information, and failing to report the resulting transactions

to the SEC.  I therefore do not believe the sophisticated means enhancement should apply.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.