PER CURIAM.
George Kline appeals the district court’s sua sponte application of a two-level enhancement for use of sophisticated means in a securities fraud case, pursuant to United States Sentencing Guideline (U.S.S.G.) § 2Fl.l(b)(6)(C) (now § 2Bl.l(b)(8)). Because the district court failed to make specific findings of fact in support of the enhancement, meaningful appellate review is not possible. We therefore reverse and remand for resentencing.
I
On July 3, 2001, George Kline pleaded guilty to six counts of a 58-count indictment charging him with various mail and securities fraud violations. Kline also pleaded guilty to a one-count information charging him with money laundering related to his mail and securities fraud violations. The indictment charged a conspiracy dating from October 1995 until March 2001.
*988 Kline’s fraudulent conduct consisted of making more than 150 illegal securities transactions through his company, Protective Mouthguards, Inc. (PMI). Kline made certain stock acquisitions based on insider information he obtained while sitting on the boards of several prominent companies. He also received insider information from two friends, Robert Hibbs and Bruce Le Due. Kline shared this information with his sons, Erich and Chris, as well as Hibbs and Le Due. Kline failed to report his PMI trades as insider transactions with the Securities and Exchange Commission (SEC). In sum, the conspiracy between the five participants garnered more than $11 million in illegal profit, with at least $2.5 million attributable to Kline.
After Kline pleaded guilty, a presentence report (PSR) was prepared calculating the offense level under the sentencing guidelines as follows: a base offense level of 8 under § 2F1.2[1] for insider trading, plus 13 additional levels under § 2Fl.l(b)(l)(N) for a loss of between $2.5 million and $5 million, plus 4 additional levels under § 3B1.1 for Kline’s leadership role in the offense, plus another 2 levels under § 3B1.3 for abuse of a position of special trust, less 3 levels under § 3E1.1 for acceptance of responsibility. Significantly, ¶ 64 of the PSR stated “[i]t was determined that sophisticated means were not involved to execute this scheme; therefore, a 2-level increase is not recommended. § 2Fl.l(b)(6).” Absent application of the sophisticated means enhancement, Kline’s final offense level was 24, which called for a sentencing range of 51 to 63 months under criminal history category I.
At the sentencing hearing held on April 17, 2002, the prosecutor agreed with the recommendation made in the PSR, stating “[w]e understand the Guideline range to be 51 to 63 months, Your Honor.” App. 27-8. Nonetheless, the district court announced during the sentencing hearing it was adding two levels under 2Fl.l(b)(6) for use of sophisticated means, resulting in a final offense level of 26 and a sentencing range of 63-78 months. The district court justified the enhancement by stating:
The defendant’s mechanisms and methods were highly sophisticated. He did so using skills that he’d acquired over a long period of time, and under those circumstances, notwithstanding the fact that it was not recited in the [presentence report], I felt it appropriate to ... place those within the ... Guideline calculus.
App. 31.
Kline’s attorney was given the opportunity to object to the district court’s sua sponte application of the enhancement, but did not. Id. The district court ultimately imposed a sentence of 78 months, at the high end of the enhanced sentencing range.
On appeal, Kline raises two issues, acknowledging both issues are subject to plain error review due to his failure to object to the enhancement at the time of sentencing. First, Kline argues the district court was required to give notice of its intent to add the enhancement, and that his due process rights were violated because he was deprived of a meaningful opportunity to mount a legal or factual challenge to the application of the enhancement. Second, Kline argues the lack of specific findings to support the application of the sophisticated means enhancement deprives this court of the opportunity to review the district court’s determination. Kline argues this is particularly sig *989 nificant because the sophisticated means enhancement was not incorporated into the guidelines until November 1, 1998. Kline was charged with fraudulent conduct dating back to October 1995. Thus, Kline argues the district court violated the ex post facto clause by considering conduct that occurred prior to November 1, 1998.
II
Kline concedes, and we agree, that his failure to object to the district court’s sua sponte application of the sophisticated means enhancement, or request more time to contest the enhancement, subjects his appeal to the plain error standard of review. United States v. Day, 998 F.2d 622, 624 (8th Cir.1993). Under the plain error standard, we will reverse only when the error is obvious, affects a defendant’s substantial rights, and seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Evans, 272 F.3d 1069, 1080 (8th Cir.2001).
Three principles guide our conclusion that Kline has satisfied the plain error standard of review. First, it is clear Kline’s fraudulent conduct straddled the effective date of the sophisticated means enhancement. The ex post facto clause prohibits the use of a guideline not in effect when the defendant’s conduct occurred if it produces a sentence harsher than one permitted under the guidelines in effect at the time the crime occurred. United States v. Zimmer, 299 F.3d 710, 717 (8th Cir.2002). Second, a violation of the ex post facto clause satisfies the plain error standard because a defendant is sentenced to more time than he might have served absent the error. United States v. Comstock, 154 F.3d 845, 850 (8th Cir.1998). Finally, a “district court must make sentencing findings sufficient to permit meaningful appellate review.” United States v. Alaniz, 148 F.3d 929, 936 (8th Cir.1998) (citing United States v. Fetlow, 21 F.3d 243, 248 (8th Cir.1994)).
The district court failed to make findings sufficient for us to determine whether it relied upon conduct which occurred prior to the effective date of the sophisticated means enhancement. To the extent the district court made findings of fact, they indicate the district court relied upon preNovember 1, 1998, conduct in violation of the ex post facto clause. The district court found that Kline acquired his “sophisticated” fraudulent skills “over a long period of time.” This finding suggests the district relied upon the entire period of Kline’s fraudulent conduct (October 1995 to March 2001) to support the application of the enhancement. In addition, the district court adopted the findings of the PSR as its findings of fact. App. 27. The PSR includes many references to conduct that occurred prior to November 1, 1998, which also indicates the district court considered conduct that occurred prior to the effective date of the enhancement.
Nothing in the record indicates the district court limited itself to consideration of post-November 1, 1998, conduct when applying the sophisticated means enhancement. Therefore, a remand is appropriate for the district court to reconsider the application of the enhancement based solely upon conduct that occurred after November 1,1998.
In light of our remand, we need not address Kline’s separate claim that his due process rights were violated by the district court’s sua sponte application of the enhancement.

. All guideline references are to those in effect prior to November 2001. The fraud guidelines have since been amended and are now found at Part 2B.